**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTORIA COLEMAN, | No. 2:12-CV-0907-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____ / | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 23) and defendant's cross-motion for summary judgment (Doc. 24).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 31, 2008. In the application, plaintiff claims that disability began on September 1, 2007. Plaintiff claims that disability is caused by a combination of "sub-average intellectual functioning, anxiety, depression, schizoaffective disorder, bipolar disorder, degenerative disc disease of the thoracic and lumbar spines, and obesity." Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 13, 2010, before Administrative Law Judge ("ALJ") Sara A. Gillis. In an August 25, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): anxiety, depressive disorder, borderline intellectual functioning, obesity, schizoaffective disorder, bipolar disorder, and degenerative disc disease of the thoracic and lumbar spines;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: claimant can perform medium work, except she can only occasionally climb, stoop, kneel, crouch, and crawl, she can understand, remember, and carry out simple job instructions and maintain concentration, persistence, and pace for simple job tasks, she can occasionally interact with co-workers and she cannot work with the public;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on January 30, 2012, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ's finding that plaintiff's mental impairments do not meet or medically equal Listing 12.05C is not supported by substantial evidence; (2) the ALJ rejected the opinions of agency examining physician Dr. Garfinkle without providing proper reasons for doing so; and (3) the ALJ erred by relying on vocational expert testimony which was based on an incomplete hypothetical.

3

A.     **Listing 12.05C**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

As to plaintiff's mental impairments and the applicability of the Listing of Impairments, the ALJ stated:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, and 12.06. . . .
>
> In activities of daily living, the claimant has mild restrictions. This was the finding of state source Dr. Davis (Exhibit 9F). In March of 2009, the claimant also told CE Dr. Daigle that she was able to go out alone and take buses and that she does her own household chores, housecleaning, laundry, and shopping. She said she also really enjoys cooking. She also said she handles her own bills and money and enjoys sitting in the yard with her son (Exhibit 4F, pages 3-5). In social functioning and concentration, persistence, or pace, the claimant has moderate difficulties. The claimant and her sister have alleged that she does not like to be around people or leave the house (Exhibits 5E and 6E). Dr. Davis also assigned moderate limitations in both of these categories (Exhibit 9F). However, CE Dr. Daigle only found that she had slight limitations in her ability to interact with the public and maintain concentration, persistence, and pace (Exhibit 4F). So, on balance, no more than moderate limitations are justified in these categories. The record does not reflect any episodes of decompensation.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria ("paragraph D" criteria of Listing 12.05) are not satisfied. . . .
>
> Paragraphs A, B, and C must also be discussed under Listing 12.05. The requirements in paragraph A are met when there is mental incapacity evidenced by dependence upon others for person needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded.

> There is no evidence of such serious deficits in the current case, as evidenced by the claimant's daily living activities discussed above. The "paragraph B" criteria are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less, and the "paragraph C" criteria of Listing 12.05 are not met because though Dr. Regazzi assessed a full scale IQ score of 61 for the claimant, her report makes clear that this score was based on current tests taken, when the claimant was 44 years of age (Exhibit 16F, pages 6 and 6). Listing 12.05C does not apply unless an IQ score below 70 was found before the claimant attained age 22. This is not the case.

Plaintiff argues that the ALJ erred in concluding that the paragraph C requirements are not met in this case. According to plaintiff, even though her full scale IQ of 61 was not measured until she was 44, "[t]he substantial evidence indicates Plaintiff's mental retardation was lifelong." Plaintiff reasons that, because there is no evidence of an intervening event – such as a head trauma – which could explain her current low IQ, she must have had a low IQ her entire life. Plaintiff also argues that, even if plaintiff did not exactly meet the requirements of Listing 12.05C because low IQ scores could not be traced to a time before she turned 22, the ALJ nonetheless erred by failing to consider whether her current condition medically equals the requirements of Listing 12.05C.

Plaintiff does not offer any evidence in support of her first argument that she has had lifelong retardation, which the court rejects. The only evidence before the ALJ showed that plaintiff's low IQ scores were not first reported until she was age 44. In any event, the court agrees with defendant that plaintiff cannot fault the ALJ for failing to engage in an equivalence analysis where she herself fails to present evidence in an effort to establish equivalence. See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 1997).

### B. **Evaluation of Dr. Garfinkle's Opinion**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

As to Dr. Garfinkle, the ALJ stated:

> On March 17, 2009, the claimant met with consultative examiner Joseph M. Garfinkle, M.D. Chief complaints were chronic back pain and arthritis that she had since 2003 but said were not work related. She said the pain radiated to her back, legs, arms, and feet and was worse with walking but that she did not need an assistive device and medications made it better (Exhibit 5F, page 3). Dr. Garfinkle found that neck range of motion was normal with pain, and he observed some spasm in the paraspinal muscles, and pain with a straight-leg raising test from her low back to legs at 30 degrees. He found both her upper and lower extremity range of motion to be full, but with pain, and examination of the wrists and hands, shoulder and elbows, were normal. He found strength to also be 5/5 in the upper extremities, and a 3-4/5 in the lower extremities, though sensory exam was intact. Dr. Garfinkle said that the claimant was unable to stand and walk on her heels and toes because of pain, and diagnosed chronic back pain with radiculopathy and upper and lower extremity pain, "most likely osteoarthritis." He opined that she could lift/carry 20 pounds occasionally and 10 pounds frequently, and that she could stand/walk for 2 hours and sit for 6 hours in an 8-hour work day, and that she could occasionally stoop but less than occasionally climb, kneel, or crouch (Exhibit 5F, pages 5-8).
>
> * * *
>
> . . .The undersigned assigns little weight to the opinion of CE Dr. Garfinkle for the reasons outlined above and for the overarching reason that there is no basis in the record, from radiology findings to the claimant's function report statements, that justifies a restriction to only walking/standing for 2 daily hours – though as discussed under paragraph 9 herein, it is significant to note that the claimant would still be capable of performing jobs if this were the case. . . .[1]

Plaintiff argues that the ALJ is simply incorrect in stating that the record does not support Dr. Garfinkle's stand/walk limitation. Setting aside for the moment the ALJ's statement that plaintiff would be disabled even accepting Dr. Garfinkle's stand/walk limitation, the court agrees with defendant that the ALJ did not err in rejecting the limitation because it was largely based on plaintiff's subjective complaints which were found not to be credible, a finding plaintiff does not challenge. See Tomasetti v. Astrue, 533 F.3d 1034, 1041 (9th Cir. 2008). Moreover, Dr. Garfinkle's opinion, though from an examining source, was contradicted by other medical

---

[1] In paragraph 9 of the hearing decision, the ALJ discusses the vocational expert's testimony that, even with the limitations described by Dr. Garfinkle, the plaintiff would still be able to perform light jobs such as mail clerk and office helper.

opinions in the record.  The ALJ met the standard outlined above by citing the contradictory evidence (i.e., unremarkable radiological findings), interpreting the evidence, and rendering a finding.

### C. Hypothetical Questions

The ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues that the ALJ relied on the vocational expert's answers to hypothetical questions which did not include plaintiff's reading limitations.  According to plaintiff, the record shows that she reads below a fourth grade level but the jobs cited by the vocational expert when asked to assume Dr. Garfinkle's stand/walk limitation (mail clerk and officer helper) require at least a fourth grade reading level.  As discussed above, the court finds that the ALJ did not err in rejecting Dr. Garfinkle's stand/walk limitation.  Therefore, it is

irrelevant what answers the vocational expert gave in response to questions assuming Dr. Garfinkle's limitation because the ALJ did not necessarily rely on those answers. Plaintiff does not raise any argument concerning the vocational expert's answers to hypothetical questions which excluded Dr. Garfinkle's stand/walk limitation and upon which the ALJ ultimately relied in concluding that plaintiff is not disabled.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (Doc. 23) is denied;

    2. Defendant's cross-motion for summary judgment (Doc. 24) is granted; and

    3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 23, 2013

                                            **CRAIG M. KELLISON**
                                            UNITED STATES MAGISTRATE JUDGE